IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWN HUEY,<br><br>        Plaintiff,<br><br>  v.<br><br>KILOLO KIJAKAZI,<br><br>        Defendant. | Case No. 21-cv-03981-MMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 17, 20 |

Before the Court is plaintiff Shawn Huey's ("Huey") motion for summary judgment, filed January 14, 2022, by which Huey seeks review of a decision issued November 9, 2020, by an administrative law judge ("ALJ"), denying his claim for Social Security Disability Insurance ("SSDI") benefits. Also before the Court is the opposition/cross-motion for summary judgment, filed March 21, 2022, by defendant, the Acting Commissioner of Social Security ("Commissioner"). Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having read and considered the parties' respective written submissions, the Court rules as follows.

## BACKGROUND

According to Huey, he "was employed by PG&E as a Meter Maintenance Person" (see Administrative Record ("AR") 704) for over nineteen years, when, on June 27, 2018, while he was working, "there was an explosion on an electrical box which caused him to fall back onto the concrete, landing on his left side," after which he "was very dazed . . . and had immediate pain in his left knee" (see AR 244).

Thereafter, on October 23, 2019, Huey filed an application for SSDI, alleging a disability onset date of June 27, 2018. On February 24, 2020, the Social Security

1  Administration ("SSA") denied Huey's application, and, on April 29, 2020, denied his
2  request for reconsideration.  Subsequently, Huey requested a hearing before an ALJ.  On
3  August 5, 2020, the ALJ conducted a hearing by telephone, at which Huey and a
4  vocational expert ("VE") retained by the SSA testified.

5  On November 9, 2020, the ALJ issued his decision, finding, based on the five-step
6  sequential evaluation process set forth in the Code of Federal Regulations,[1] Huey was
7  not disabled.  At step one, the ALJ determined Huey "had not engaged in substantial
8  gainful activity since June 27, 2018, the alleged disability onset date."  (See AR 15.)  At
9  step two, the ALJ found Huey had two "severe impairments," namely, "back impairment
10 and status-post traumatic brain injury" ("TBI"), as well as two "non-severe" impairments,
11 namely, "obesity" and "depression."  (See AR 15.)  At step three, the ALJ determined
12 Huey "d[id] not have an impairment or combination of impairments that me[t] or medically
13 equal[ed] the severity of one of the listed impairments in 20 CFR, Part 404, Subpart P,
14 Appendix 1."  (See AR 17.)  Before continuing to step four, the ALJ determined Huey's
15 "residual functional capacity" ("RFC"),[2] and, in that regard, found Huey could "perform the
16 full range of sedentary work, as defined in 20 CFR § 404.1567(a)."[3]  (See AR 18.)  At

---

[1] The "five-step sequential evaluation process" for disability determinations "ends when the ALJ can make a finding that the claimant is or is not disabled."  See Woods v. Kijakazi, 32 F.4th 785, 788 n.1 (9th Cir. 2022).  "At the first step, a claimant doing substantial gainful work activity is not disabled.  At the second step, a claimant is not disabled unless [he/she] has a medically determinable physical or mental impairment or combination of impairments that is severe and either lasts at least a year or can be expected to result in death.  At the third step, a claimant is disabled if the severity of [his/her] impairments meets or equals one of various impairments listed by the Commissioner of Social Security, 20 C.F.R. pt. 404, subpt. P, app. 1.  At the fourth step, a claimant is not disabled if [his/her] residual functional capacity allows [him/her] to perform [his/her] past relevant work.  At the fifth step, a claimant is disabled if, given [his/her] residual functional capacity, age, education, and work experience, [he/she] cannot make an adjustment to other work that exists in significant numbers in the national economy."  See id. (internal quotations, citations, and alteration omitted).

[2] RFC is "the most [the claimant] can still do despite [his/her] limitations."  See 20 C.F.R. § 404.1545(a)(1).

[3] "Sedentary work" is "work [that] involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  See 20 C.F.R. § 404.1567(a); see also SSR 96-9P, 1996 WL 374185, at *3 (July 2, 1996) (explaining "'[o]ccasionally' means occurring from very little up to one-third of the time,

step four, the ALJ determined Huey "[wa]s unable to perform any past relevant work." (See AR 23.) Lastly, at step five, the ALJ found "there [we]re jobs that exist[ed] in significant numbers in the national economy that [Huey] c[ould] perform" (see AR 23), and, based thereon, denied Huey's application.

Huey thereafter requested the Appeals Council ("AC") review the ALJ's decision. On May 3, 2021, the AC denied review, explaining it had considered the reasons why Huey disagreed with the ALJ's decisions and that those reasons "d[id] not provide a basis for changing" the decision. (See AR 1.)

On May 26, 2021, Huey filed the instant action for review.

**STANDARD OF REVIEW**

"An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." See Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotation and citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and . . . resolving ambiguities." See Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The district court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [the ALJ] did not rely." See Garrison, 759 F.3d at 1010. Further, it "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." See id. at 1009. "Even when the ALJ commits legal error," however, the court must "uphold the decision where that error is harmless," i.e., "if it is

---

and would generally total no more than about 2 hours of an 8-hour workday"). "Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." See id. 20 C.F.R. § 404.1567(a).

3

inconsequential to the ultimate nondisability determination." See Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014) (internal quotation and citation omitted).

**DISCUSSION**

In his motion for summary judgment, Huey argues the ALJ erred in his step two analysis, erred in his evaluation of Huey's testimony, and erred by not considering his wife's third-party statement. (See Pl.'s Mot. for Summ. J. ("Pl.'s Mot.") at 15:24-16:4, Dkt. No. 17.) The Court discusses below the asserted errors.

**A. Step Two**

The Ninth Circuit "ha[s] defined the step-two inquiry as a de minimis screening device to dispose of groundless claims." See Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001) (internal quotation and citation omitted). At step two, the SSA "consider[s] the medical severity of [the claimant's] impairment(s)," and, if the claimant "do[es] not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement," the claimant will be found not disabled. See 20 C.F.R. § 404.1520(1)(4)(ii); see also id. § 404.1509 (explaining impairment, to satisfy duration requirement, "must have lasted or must be expected to last for a continuous period of at least 12 months").

Under the SSA's regulations, a "medically determinable physical or mental impairment[] . . . must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques [and] must be established by objective medical evidence from an acceptable medical source." See id. § 404.1521. Further, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." See id. § 404.1522(a); see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (explaining "Social Security Regulations and Rulings, as well as case law applying them, discuss the step two

severity determination in terms of what is 'not severe'").

Here, as noted, the two severe impairments the ALJ found were "back impairment" and "status-post traumatic brain injury." (See AR 15.) Although Huey had also alleged "obesity, left knee pain, neck pain, head pain and depression," the ALJ, without further elaboration, determined "[t]hese alleged impairments have been responsive to treatment, cause no more than minimally vocationally relevant limitations, have not lasted or are not expected to last at a 'severe' level for a continuous period of 12 months or expected to result in death, or have not been properly diagnosed by an acceptable medical source." (See AR 15.) Huey, in his motion, challenges the ALJ's step two analysis only as to his depression and knee condition. Although the ALJ discussed his reasons for concluding Huey's depression, which he found was a "medically determinable mental impairment" (see AR 17), was, nevertheless, "non-severe" (see AR 16), he did not further discuss Huey's alleged left knee impairment.[4] As discussed below, the ALJ's above-cited reasons for rejecting Huey's left knee impairment are not supported by substantial evidence.[5]

To the extent the ALJ determined the condition of Huey's knee had not been properly diagnosed by an acceptable medical source, the record is to the contrary. (See AR 749 (report regarding magnetic resonance imaging ("MRI") study performed July 29,

---

[4] As the ALJ provided the above-cited single list of reasons for collectively rejecting five alleged impairments, it is unclear whether, as to Huey's left knee condition, the ALJ determined it was not a medically determinable impairment or not a severe medically determinable impairment.

[5] The Court need not resolve herein any question as to whether the ALJ erred in his step two severity finding pertaining to Huey's depression, given that the ALJ stated in his decision that "[a]ll impairments, regardless of severity, have been considered in combination in assessing the claimant's residual functional capacity" (see AR 17), and went on to discuss his consideration of mental limitations in assessing Huey's RFC (see AR 19, 21-22). Consequently, even if the ALJ should have included Huey's depression as a severe impairment at step two, Huey was not prejudiced thereby, as the ALJ resolved step two in Huey's favor and continued with the sequential evaluation process. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (finding "any error was harmless" where ALJ did not count claimant's bursitis as severe impairment at step two but "considered any limitations posed by the bursitis at Step 4").

2019, at Eden Medical Center, setting forth Matthew D. Epstein, MD's findings of "[l]ow to moderate (grade 2/3) patellar chondrosis[6] as well as low-grade (grade 1) chondrosis along the inferior aspect of the medial trochlea"); see also AR 328, 330, 333, 335, 337, 339, 341, 343, 345, 347, 349, 353, 355, 357, 582, 584, 587, 593, 605, 813, 816, 826, 833 (medical records of Eduardo Lin, MD ("Dr. Lin") covering period from January 15, 2019, to June 19, 2020, and finding, on over twenty occasions, "positive Apley's test[s][7] of the left knee [and] decreased strength and range of motion in th[at] area[]").)

To the extent the ALJ found such condition lacking in severity or duration, the record reflects that Huey consistently experienced left knee pain from as early as September 4, 2018 (see AR 223 ("Initial Pain Management Evaluation" dated September 4, 2018, by Dr. Lin) (noting Huey "now has pain in left knee")), until as late as June 19, 2020 (see AR 833 (letter dated June 19, 2020, from Dr. Lin to PG&E) (noting Huey "is demanding . . . treatment of his left knee" and "ended up going to the emergency room recently due to worsening pain and . . . was prescribed medication Valium as well as Flexeril")), which pain was not responsive to treatment (see AR 674 ("Progress Note" dated August 15, 2019, by Maria Arellano, NP, at Center for Occupational Health) (noting "cortisone injection to his knee . . . done last week and he is still not noticing improvement")). Additionally, as to resulting vocational limitations, Huey testified his left knee "gives [him] difficulty" with walking and that it is "sometimes . . . so painful [he] do[esn't] leave the house." (See AR 33-34.)[8]

---

[6] "Chondrosis is a general term that refers to cartilage deterioration." See Ann P. v. Saul, 2021 WL 1893027, at *3 n.3 (C.D. Cal. May 11, 2021).

[7] An Apley's test "is used to evaluate individuals for problems of the meniscus in the knee." See Apley's Test, Physiopedia, https://www.physio-pedia.com/Apley%27s_Test (last visited Jan. 20, 2023).

[8] Although the SSA does "not use [a claimant's] statement of symptoms . . . to establish the existence of an impairment[]," see 20 C.F.R. § 404.1521, the SSA does require that such statements be considered in determining "whether [a claimant] ha[s] a severe . . . impairment[], and at each of the remaining steps in the process," see id. § 404.1529(d).

The Commissioner, in her opposition/cross-motion, does not address Huey's argument that the ALJ erred in "rejecting [his] knee impairment" (see Pl.'s Mot. at 19:19), and, for the reasons discussed above, the Court finds the ALJ's rejection was error.

Further, the Court finds the error was not harmless.

The ALJ must, as to medically determinable impairments, "consider all of [a claimant's] statements about [his] symptoms, such as pain, and any description . . . nonmedical sources may provide about how the symptoms affect [the claimant's] ability to work," see 20 C.F.R. § 404.1529(a), and, in assessing the RFC, must "consider descriptions and observations of [the claimant's] limitations from [the claimant's] impairment(s), including limitations that result from [the claimant's] symptoms, such as pain," see id. § 404.1545(a)(3).

Here, as noted, the ALJ determined Huey "has the [RFC] to perform the full range of sedentary work." (See AR 18.) As also noted, however, such work can involve an amount of walking as well as standing, and, in particular, for "up to one-third of the time" in a workday. See SSR 96-9P, 1996 WL 374185, at *3. As discussed above, however, Huey testified the pain in his left knee interferes with his ability to walk. Moreover, Huey testified his knee pain not only interferes with his ability to walk but also with his ability to leave the house, which testimony, in turn, bears on Huey's ability to report to work on a regular basis. At the hearing, the VE testified that Huey's "miss[ing] three or more days per month consistently . . . would . . . preclude his past work or any other work." (See AR 38.) In light of all such testimony, the ALJ's error in rejecting Huey's left knee impairment cannot be characterized as "inconsequential to the ultimate nondisability determination." See Treichler, 775 F.3d at 1099.

In sum, the Court finds the ALJ erred at step two when he rejected Huey's knee impairment, which error could have impacted other aspects of the ALJ's decision, including, most importantly, his RFC assessment. Accordingly, the Court, as Huey requests (see Pl.'s Mot. at 25:16), remands the case for further proceedings, see Treichler, 775 F.3d at 1101–02 (noting "[t]he decision whether to remand a case for

7

additional evidence or simply to award benefits is in [the reviewing court's] discretion"). On remand, the ALJ shall re-evaluate Huey's left knee impairment, and, if he continues to discount it at step two, must set forth "specific, clear, and convincing reasons," see Urb. v. Saul, 808 F. App'x 453, 456 (9th Cir. 2020), supported by the record, for doing so.

### B. Other Issues

To assist the parties on remand, the Court also notes below several other issues with respect to the ALJ's evaluation.

#### 1. Huey's Testimony

The ALJ, as noted, determined Huey's status post TBI constituted a medically determinable impairment. (See AR 15.) With regard to the RFC, however, he discounted the evidence as to its severity.

"If . . . there is no affirmative evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so.'" See Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting Smolen, 80 F.3d at 1281).[9] Here, as to the severity of Huey's symptoms, the ALJ found Huey "is not limited by status post traumatic brain injury to the degree alleged." (See AR 20.) The ALJ's reasons in support of this finding, however, fail to meet the clear and convincing standard.

In particular, although the ALJ cited to a "neurological examination[]" and an "[MRI] of the claimant's brain" (see AR 20 (citing AR 387, 762)), which showed, in 2019 and 2020, respectively, no remarkable findings (see AR 387, 762), Huey produced a record of a computerized tomography ("CT") scan performed on June 30, 2018, three days after the explosion, that revealed a "[c]losed head injury with likely post concussive syndrome" (see AR 421). "Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to the

---

[9] The Commissioner does not dispute the applicability of the "clear and convincing" standard. (See Def.'s Cross-Mot. for Summ. J. and in Opp'n to Pl.'s Mot. for Summ. J. at 10 n.3, Dkt. No. 20.)

severity of symptoms merely because they are unsupported by objective medical evidence." See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).

Next, the ALJ noted that "[a]lthough [Huey] alleged problems with balance, he did not indicate that he required the use of a cane." (See AR 20 (citing AR 185, 367).) As noted, however, Huey testified he falls because of "dizziness" (see AR 36), a condition no medical professional has indicated can be remedied by the use of a cane. See Banks v. Barnhart, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) (noting ALJ "must not succumb to the temptation to play doctor and make [his] own independent medical findings").

Lastly, the ALJ, citing one record by Aparna Dixit, PsyD ("Dr. Dixit"), found "treatment notes indicat[ed] '[Huey] said he is able to perform all ADLs [activities of daily living].'" (See AR 20 (citing AR 463).) The record to which the ALJ cites, however, reveals a qualification that performing such activities "results in increased pain." (See AR 463.) Additionally, in the same paragraph, Dr. Dixit noted Huey "has headaches, . . . gets dizzy," and "has a hard time concentrating on the task at hand." (See AR 463.) An ALJ "cannot cherry-pick evidence to support [his] findings." See Lannon v. Comm'r of Soc. Sec. Admin., 234 F. Supp. 3d 951, 960 (D. Ariz. 2017) (internal quotation and citation omitted); see also Holohan v. Massanari, 246 F.3d 1195, 1207 (9th Cir. 2001) (finding error where ALJ "selectively relied on some entries in [claimant's medical records] and ignored the many others that indicated continued, severe impairment"). Moreover, the ALJ made no finding as to Huey's headaches, which Huey testified preclude his ability to report to work on a regular basis. (See AR 36 (stating "probably three times per week[, he's] not leaving the house because the headaches are so bad").)

Accordingly, on remand, to the extent the ALJ rejects Huey's testimony as to the severity of any of his symptoms, the ALJ must provide "specific, clear and convincing reasons for doing so." See Smolen, 80 F.3d at 1281.

### 2. Wife's Third-Party Statement

The ALJ may reject "[l]ay testimony as to a claimant's symptoms" only by "expressly determin[ing] to disregard such testimony and giv[ing] reasons germane to

each witness for doing so." See Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); see also Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (noting "the reasons germane to each witness must be specific") (internal quotation and citation omitted).

Here, the ALJ rejected Huey's wife's lay witness report in its entirety, stating the following: "I have reviewed and considered the statement but find it inconsistent with the record and relevant factors to the extent inconsistent with the findings herein based on the evidence and reasons discussed." (See AR 22.) Such generalized commentary does not suffice to meet the above requirements. See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (noting ALJ "is required to provide specific reasons for rejecting lay testimony").

Accordingly, on remand, to the extent the ALJ rejects Huey's wife's testimony, the ALJ must provide germane and specific reasons for doing so.

## CONCLUSION

For the reasons stated above, Huey's motion for summary judgment is hereby GRANTED, the Commissioner's opposition/cross-motion for summary judgment is hereby DENIED, and the action is hereby REMANDED, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: January 20, 2023

MAXINE M. CHESNEY
United States District Judge